## TRIGO v. PEOPLE OF PUERTO RICO.

### No. 3498.

Circuit Court of Appeals, First Circuit.

June 4, 1940.

Henry G. Molina, of San Juan, P. R., for appellant.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This is an appeal from the Supreme Court of Puerto Rico, affirming a judgment of the District Court for the Judicial District of Guayama, in an action of revendication or ejectment wherein the plaintiff seeks to recover from The People of Puerto Rico a parcel of land of something over seven hundred acres on that Island. The judgment of the District Court, which was affirmed, validated the title of the defendant, decreeing "that the defendant and cross-complainant, The People of Puerto Rico, is the absolute owner of the property in controversy herein and that it should remain in the possession and enjoyment thereof".

We are informed by plaintiff's counsel that the facts are not in dispute and that they all appear in the records of the Registry of Property and from records in The Department of the Interior of proceedings had before The Superior Composition and Sales Board of Uncultivated Lands. Also that he makes one point only in his appeal, and that is that "the court erred in holding that in accordance with the records of the Registry of Property, appellant did not acquire a valid title to the ownership of

the Amalia property, which could not be defeated by proceedings that did not appear in the Registry, and of which he and his predecessors had no notice".

The records referred to are in evidence. The "Amalia property" is the land in question.

To sustain his claim of absolute ownership the plaintiff relies upon a chain of title running back to grants from the Superior Composition and Sales Board of Uncultivated Lands of Puerto Rico, in 1875, to various persons, the instruments of conveyance each containing a condition to the effect that the grant "is subject to be revoked, in which case the land will revert to the Crown, if within the term of one year one-tenth of the property is uncultivated, one-fourth within four years and one-half within ten years".

One Eduardo Cervoni Mari acquired from the original grantees, subject to the same condition, the several parcels making up the whole tract in question, and in 1892 sold his interest to one Antonio Giordani Semidey, the record of the transfer containing the following:

"Second: The vendor Eduardo Cervoni subrogates in his place and stead the vendee Giordani and grants the latter firm and irrevocable authority in order that he might take whatever steps and actions was necessary to secure from the government or from the General Finance Administration the free use and enjoyment of the 600 cuerdas of land above referred to, and if successful totally or partially to dispose of them as if the property were his own. Third: It is an essential condition of this sale that the vendor Cervoni does not warrant the title nor is he subject to any other responsibility, for the vendee Giordani is not entitled to demand anything from Cervoni nor to bring suit against him by virtue of this sale, as they have so stipulated. So that Mr. Cervoni is only bound by the truth of the terms of this deed and not by anything else, this sale being made at the risk and hazard of the vendee and without any further liability, the vendee accepting the consequences of the sale as made."

In 1895 the last named grantee transferred his interest to one Juan Pablo Giordani Semidey (referred to also as Juan P. Giordani) subject to the conditions in the previous deeds, and the latter on April 13, 1896, mortgaged to a Puerto Rican bank, this mortgage being subsequently foreclosed and the plaintiff acquiring title from the grantee of the bank in 1918.

Later in 1896, in pursuance of orders passed in August, 1895, and March, 1896, by the Superior Board, the Central Tax Administration seized part of the land for non-compliance with the conditions of the original grants and from the records of a meeting of the Superior Board in September, 1896, it appears that all the parcels had been taken possession of, in pursuance of decrees declaring a reversion to the State (then the Crown of Spain), and the property was placed in the custody of Juan P. Giordani, as custodian or agent for the government.

The resolutions and other proceedings of the Superior Board decreeing the revocation of the original grants and the reversion of the lands to the State were never recorded in the Registry of Property, and for that reason the plaintiff claims to stand in the position of an innocent third party unaffected by the proceedings taken to cause the property to revert to the State. He claims to have a good title to the property free of all adverse claims by The People of Puerto Rico. The latter, on the other hand, claims the property as owner, by virtue of the stipulations in the original deeds and the proceedings taken to enforce them. There is no question that The People of Puerto Rico has now succeeded to the rights of the Spanish Crown by virtue of the Spanish treaty with this country and the subsequent action of Congress.

The Supreme Court held that, under the local law in force in Puerto Rico, the grantees from the Crown in the deeds of 1875 above referred to, did not acquire ownership of the property, but only the right to acquire ownership by complying with the express conditions in the deeds, which were inserted for the purpose of promoting agriculture; that the registry of the deeds was notice to all purchasers subsequent to the original grantees, as well as the grantees themselves, that they had until 1885 to acquire the ownership of the land by cultivating one-half of it; that in the deed to Antonio Giordani Semidey in 1892 there was clear admission of non-compliance with the conditions of the grant and that "if Antonio Giordani Semidey

solely acquired rights and actions to take the necessary steps to secure the free use and enjoyment of the immovable, that was the only thing he could transmit to Juan P. Giordani, and the only thing that the latter could mortgage to the bank, and, finally, the only thing that the plaintiff could acquire through the various transfers made subsequent to the record of the deed of June 8, 1892; . . and from the registry nothing appears showing that Juan P. Giordani or his successors took any steps to obtain from the government the free use and enjoyment of the immovable".

The court did not consider that under the applicable Mortgage Law of Puerto Rico the plaintiff could rightly claim to be in the position of an innocent third party. The proceedings of the Superior Board authorizing the taking possession of the property were not recorded, but the entries in the Registry were held to be sufficient to inform all persons that absolute title could not be acquired by anyone unless the conditions in the deeds were complied with or something in the nature of a release obtained from the State.

The plaintiff relies upon the case of People of Porto Rico v. Livingston, 1 Cir., 47 F.2d 712, but that case is not pertinent. In the Livingston case the defect in the title did not appear in the recorded conveyances and therefore the court held that Livingston was not bound to notice it; whereas, here, the defect does appear on the face of the entries in the Registry of which plaintiff and his predecessors in title are bound to take notice.

The judgment of the Supreme Court of Puerto Rico is based on its interpretation and application of local statutes. On the record presented its action in affirming the judgment of the District Court of Puerto Rico appears to be justified. The deference due to the interpretation of local law by the local court is fully recognized by us. Certainly it cannot be said that the court was clearly, much less "inescapably" wrong. Sancho Bonet, Treasurer v. Texas Co., 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401; Diaz v. Gonzales, 261 U.S. 102, 43 S.Ct. 286, 67 L.Ed. 550.

The judgment of the Supreme Court of Puerto Rico is affirmed with costs.